IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN. REESE, | ) | CASE NO.  3:21-CV-993 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| STATE OF OHIO, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Shawn Reese ("Reese" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254. Reese is in the custody of the Toledo Correctional Institution (prisoner #A760-505)

pursuant to journal entry of sentence in the case *State v. Reese,* Cuyahoga County Common Pleas Court

Case No. 2018 CR 624729.  For the following reasons, the undersigned recommends that the Petition be

**DENIED**.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a

state court, factual determinations made by state courts are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th

Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state trial court summarized

the facts underlying Reese's conviction as follows:

Rakim Grant was shot to death in defendant Shawn Reese's house on August 10, 2017. The indictment in this case charges Reese with four crimes in connection with the killing: murder, felony murder, felonious assault and tampering with evidence. On August 14, 2018, the defendant waived a jury trial and the case was tried to the court over three days. This judgment follows.

Eight witnesses testified for the prosecution at trial. They are: Nefertiti Reese, the defendant's mother; Terrence Hardwick, Nefertiti Reese's ex-husband; James Grotenrath, Mark Worsencraft and Taylor Cunningham, three Cleveland police officers on the crime scene within minutes; David Borden, a Cleveland police detective overseeing the investigation into the killing; Curtiss Jones, a trace evidence specialist and supervisor in the Cuyahoga County medical examiner's office; and David Dolinak, M.D., a forensic pathologist who autopsied Grant. The State of Ohio also admitted 76 exhibits into evidence, including a video recording of a nearly 45-minute statement Reese gave to Borden after his arrest in December 2017. The defendant's sole witness was Taniah Hardwick, the daughter of Nefertiti Reese and Terrence Hardwick.

What follows are my conclusions, beyond a reasonable doubt and based upon the credible direct evidence of record plus reasonable inferences drawn from it, about the facts of what happened leading up to and after Grant's violent death.

Grant came to Reese's house at 3301 East 137 in Cleveland's Kinsman neighborhood in the evening of August 10. According to the defendant, Grant was there to give him a tattoo, and that assertion is supported by the fact that a set of tattoo tools was found during the investigation of the shooting. Reese and Grant were in the basement. Nefertiti Reese and Taniah Hardwick lived with Reese and they were on the first floor. Taniah Hardwick was on crutches because of a knee surgery two days earlier and her father, who does not live at the home, was there to assist in the early stages of her recovery. He was on the second floor.

A door on the driveway side of the house leads to a landing. Down about eight steps from the landing is the basement recreation room; up the landing about four steps is the kitchen and the first floor living room is beyond the kitchen.

Reese and Grant began to argue in the basement. The reason is not clear: Reese told the police that he discovered that Grant had stolen some money he had stashed in the recreation room's drop ceiling so he grabbed Grant's front pocket to get his money back; Grant never had the chance to give his side of the story. Suffice to say a struggle began.

The defendant's three family members offered different accounts of what happened next. Nefertiti Reese claims to have gone in the basement after hearing her son call for help and seeing the men "in a tussle . . . you know, in a fight." She tried to physically separate them but couldn't, and she claims that one of them said "get out of the way, you're going to make the gun go off," yet she never testified to seeing a gun, although she did say Grant was holding something under his arm. The two men and Nefertiti Reese eventually ended up in the living room where Grant was "in an embrace with my son." At that point the fray was moving toward Taniah Reese, whose limited mobility made her vulnerable

2

to getting hurt, so Nefertiti Reese moved her daughter to a back room and then called 911 twice in quick succession.

Taniah Hardwick testified that she was upstairs when she heard Reese yell "Help. Get dad He got a gun." She then saw the two men clutching and "tussling" on the basement stairs, with Grant on top of the defendant and her mother trying to break up the fight. She did not see a gun but claims Grant told her mother to move away because the gun's safety was not on. At that point she backed into the living room and didn't see anything else but she did hear the side door opening and Reese saying "just leave," to which Grant replied "no" and then she heard gunshots. According to Taniah Hardwick, Grant got shot "outside of the house." She too called 911.

Terrence Hardwick was upstairs in his daughter's bedroom when he heard her scream for him. When he came downstairs his daughter was "panicking" and "hysterical" saying that someone had just shot a gun in the house. Terrence Hardwick then saw Grant holding Reese on the side door landing in a "reverse headlock." He did not see a gun and did not see any blood at that point. Nefertiti Reese was right near them and she told Terrence Hardwick to call 911 and he went back upstairs to use his phone for the call, during which he heard three gunshots. When he returned downstairs both men were gone but he heard a voice from the driveway near the storm door, gurgling blood and gasping for air, saying "Please, I got kids."

Recordings of three of the four 911 calls are in evidence as exhibits, but all four were played in court during the trial. According to the time stamps on the recordings Terrence Hardwick made the first call at 2103:02, Nefertiti Reese called next at 2103:48 and then again at 2104:07. Taniah Hardwick called at 2103:54.

Terrence Hardwick began his call by saying "somebody just got shot in my house." When the operator asked the age of the injured person he said "I don't know, he's still shooting" inside the house and that he can't describe what the shooter looks like. He then asserted that both people were shooting at each other. The quality of the recording of Nefertiti Reese's first call is mixed, apparently because of her phone connection, and it is evident that the 911 dispatcher had difficulty understanding her first words, but she can be heard to say "gunshots fired, 3301" before the call cuts off. During her second call she doesn't say much that is intelligible beyond that, but she does deny knowing whether "anyone is down." Taniah Hardwick's call to 911 is not in evidence as an exhibit but it was played in open court during her testimony. During her call she did not name her brother as either a person who fired shots or was shot at. The same can be said for her parents: neither of them reported that Shawn Reese had been shot, or shot at, nor did they name him as a shooter.

Although Reese was on probation for improperly handling firearms in a motor vehicle all three of his family members said he was not known to have a gun.

The exact time the first police officer arrived at the scene is not in evidence, but Worsencraft's body worn camera shows his car pulling up on East 137 at 2114, or 9:14 p.m., about 11 minutes after the first 911 call, just as he is receiving a radio call that other

3

officers were surrounding the house and a man - who turned out to be Terrence Hardwick - was emerging from the house with his hands up.

Reese was gone before the first police officer reached the scene. Grant was prone and lifeless against the side of the house near the door. There is no evidence that he had any cash. No guns were turned up in a search of the house and premises. Copious blood - all of it Grant's – was seen on the right wall descending the stairs to the basement, the landing at the top of those stairs, the linoleum steps going up to the kitchen and the carpeted steps going down to the basement. Four spent shell casings were discovered: one of them on the landing, two at the base of the wall at the bottom of the steps and another a few feet from those two into the recreation room. A single unfired bullet was on the bottom step in the basement and a spent bullet was on the floor near the two casings at the end of the stairs. All of the casings and the bullet were .40 caliber.

Dolinak's autopsy revealed that Grant had been shot once through the left cheek and once in the right side of his chest. The bullet to the head exited through the right side of his neck where it tore the carotid artery, causing significant external and internal bleeding and, ultimately, Grant's death. The other bullet went out his left hip. Neither entrance wound revealed stippling (dotted abrasions on the skin from unburned gunpowder expelled from the gun's barrel) or fouling (the residue from burned gunpowder), suggesting that the muzzle of the gun was at least two feet away from Grant when it was fired.

A warrant was issued for Reese's arrest and he was eventually arrested in mid-December 2017. His whereabouts during those four months were not established by the evidence, but he did get money and clothes from his mother from time to time.

*State v. Reese*, No. CR 18 624729 (Doc. No. 10-1 at 39-44, Ex. 12).

## II.     Procedural History

**A.     Trial Court Proceedings**

In January 2018, the Cuyahoga County Grand Jury indicted Reese in two different cases. He was indicted in Case No. CR-18-62479-A on: one count of Murder (R.C. 2903.02(A))with firearm specifications (Count 1); one count of Murder (R.C. 2903.02(B)) with two firearm specifications (Count 2); one count of Felonious Assault (R.C. 2903.11(A)(1)) with two firearm specifications (Count 3); and one count of Tampering With Evidence (R.C. 2921.12(A)(1))(Count 4). (*Id.*, Ex. 3, Case No. CR-18-624729-A) The events giving rise to this

4

indictment took place on August 10, 2017. Reese pled not guilty to all charges. (*Id.*, Ex. 4) The trial court referred to this case as "the murder case."

Reese was also indicted in Case CR 17-62440-A on: one count of Aggravated Robbery (R.C. 2911.01(A)(1)) with two firearm specifications (Count 1); one count of Robbery (R.C. 2911.02(A)(1)) with two firearm specifications (Count 2); one count of Kidnapping (R.C. 2905.01(A)(2)) with two firearm specifications (Count 3); one count of Petty Theft (R.C. 2913.02(A)(1)) (Count 4); one count of Carrying a Concealed Weapon (R.C. 2923.12(A)(2))(Count 5); and one count of Possessing Criminal Tools (R.C. 2923.24(A))(Count 6). (*Id.*, Ex. 1) This case was assigned to the same judge as CR-18-624729. (*Id.* Ex. 21, ¶4) Reese pled not guilty to all charges. (*Id.*, Ex. 2). The events giving rise to this indictment took place on December 15, 2017. (*Id.*) The trial court referred to this case as "the aggravated robbery case." (*Id.*) Reese's arrest in the aggravated robbery case was how he was found and arrested in the "murder case." (*Id.* at ¶5)

Both cases were set for trial on August 13, 2018, with the 624420 ("aggravated robbery") trial going first and the 624729 ("murder") trial after there was a verdict in 624420. (*Id.*, Ex. 5; Ex. 21 at ¶5). At a pretrial conference on August 8, 2018, the trial judge stated:

> [A]s of today, Mr. Reese, both [trials] remain set for August 13; but as just mentioned, we're not going to try the two of them together. It's going to be one after the other. First, the aggravated robbery; and then the murder.

(Ex. 21, ¶5) On the morning of August 13, 2018, defense counsel informed the court that Reese was "unsatisfied," and thought that the murder case would be tried first. (*Id.*, ¶7) Reese addressed the court and further complained that he had not seen evidence on the aggravated robbery case until recently and felt that his attorney was deceitful, had been giving him "bad legal advice," and had not yet asked Reese for his "point of view" on the case. (*Id.*, ¶9) The court

5

expressed disbelief that Reese claimed he had just found out about the aggravated robbery trial and that he was being forced into trying a case too quickly. (*Id.* at ¶13) The court denied Reese's motion for a continuance, and defense counsel represented that he was ready for either trial that day. (*Id.* at ¶17) The State put its plea offer on the record of 15-to-30 years in prison for both cases, down from the previous offer of 23-to-30 years. *Id.* at ¶10, 18. After speaking with defense counsel, Reese rejected the plea offer. Nonetheless, he pleaded guilty to the six-count indictment in the "aggravated robbery case" (624420). (*Id.* at 19) Reese indicated through counsel that he preferred to be sentenced in the "aggravated robbery case" after the murder trial. (*Id.*) The murder trial was then continued to August 14, 2018, due to the plea in the other case. (*Id.*, Ex. 7)

On August 14, 2018, Reese executed a waiver of a jury on the murder trial. (*Id.*, Ex. 9, 10) Trial commenced and the court denied Reese's Crim.R. 29 motion for an acquittal after the State rested its case. (Entry, Exhibit 11). At the end of trial, the court found Reese guilty on Counts 1-3 with firearm specifications and Count 4. (Entry, Ex. 12) The parties stipulated that Counts 1-3 were allied offenses and on August 28, 2018, the trial court sentenced Reese to: 15 years to life in prison for Count 1 (murder) plus 3 years in prison for all firearm specifications; and 24 months in prison for Count 4 (tampering with evidence), served concurrently. (Sentencing Entry, Ex. 13) That same day, the Court also sentenced Reese in the "aggravated robbery case." In that case, the court found that Counts 1, 2, 3, 4, and 6 were allied offenses and sentenced Reese to: 7 years in prison for Aggravated Robbery, plus 3 years for a firearm specification; and 12 months in prison for Carrying a Concealed Weapon, to be served concurrently for an aggregate prison term of 10 years. This would be consecutive to a sentence in the murder case. (Sentencing Entry, Exhibit 8, Case No. CR-17-624420-A).

6

**B.      Direct Appeal**

Reese did not appeal the aggravated robbery sentence. However, through new counsel,

Reese filed a timely notice of appeal in the "murder" case (624729) to the Court of Appeals for

Cuyahoga County, Ohio, Eighth Circuit Appellate District. (*Id.*, Ex. 14) In January 2019,

Reese's appellate counsel moved to withdraw and filed a brief pursuant to *Anders v. California*,[1]

asserting that counsel found no meritorious issues for appeal. (*Id.*, Ex. 15) Nonetheless, based on

Anders, counsel submitted four "possible" assignments of error:

> 1. The conduct of trial counsel denied the appellant his right to the effective assistance of counsel.
>
> 2. The trial court's finding that Defendant acted purposely was against the manifest weight of the evidence and the trial court should have considered the lesser included offenses of either reckless homicide or negligent homicide.
>
> 3. The trial court sentenced Mr. Reese to a sentence not supported by the record and contrary to law.
>
> 4. The trial court erred in accepting Mr. Reese's waiver of the right to a jury trial.

(*Id.*, Ex. 15). After review, the appellate court granted counsel's motion to withdraw and gave

Reese until March 29, 2019, to file a pro se appellate brief. (*Id.*, Exs. 17-18)  In February 2019,

the appellate court found at least one issue of arguable merit and appointed new appellate

counsel on Reese's behalf. (*Id.*, Ex. 18). Subsequently, through new counsel, Reese filed an

appellant brief raising two assignments of error:

> 1. Appellant was denied due process of law and a fair trial pursuant of the Sixth and Fourteenth Amendments to the United State Constitution due to failure of the trial judge to disqualify himself due to an expressed belief that the appellant was untruthful and attempting to deceive the court.

---

[1] *Anders v. California*, 386 U.S. 738 (1967), establishes procedures appointed counsel must following when seeking to withdraw from a criminal appeal based on counsel's assessment that the absence of arguable issues in the case would make any appeal frivolous. The motion must be accompanied by a brief "referring to anything in the record that might arguably support the appeal." *Id.* at 744.

2. Appellant's right to effective assistance of counsel as guarantee by the Sixth and Fourteenth Amendments to the United State Constitution was violated due to the failure of counsel to raise and preserve the issue of potential bias on the part of the trial court.

(*Id.*, Ex. 19). The State submitted a responsive brief. (*Id.*, Ex. 20) On November 14, 2019, the Ohio Court of Appeals affirmed the judgment of the trial court but remanded to the trial court so that a nunc pro tunc entry could be made to incorporate the consecutive findings that the court had made orally. (*Id.*, Ex. 21; *State v Reese*, Eighth App. Dist. (Cuyahoga) No. 107714, 2019-Ohio-4670, 2019 Ohio App. LEXIS 4713 (Ohio App. Nov. 14, 2019)).

On February 18, 2020, Reese pro se filed a Notice of Appeal with the Ohio Supreme Court under Case No. 2020-0262. (Doc. No. 10-1, Ex. 22). Reese also moved for a delayed appeal (*Id.* at Ex. 23), which the Ohio Supreme Court granted. (*Id.*, Ex. 24). In his memorandum in support of jurisdiction, he raised the following propositions of law:

I. The appellant was denied due process of law and a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution due to expressed belief that the appellant was untruthful and attempting to deceive the court.

II. The appellant's right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution was violated due to the failure of counsel to raise and preserve the issue of potential bias on the part of the trial court.

(*Id.*, Ex. 25). The State waived a memorandum in opposition. (*Id.*, Ex. 26). On June 23, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 10-1, Ex. 27; *State v. Reese,* No. 2020-0262, 2020 Ohio LEXIS 1422, 2020-Ohio-3365, 147 N.E.3d 663 (Ohio June 23, 2020)).

## C.    Remanded Entry

On January 10, 2020, the trial court vacated the August 30, 2018 sentence. The court replaced it with a new entry that repeated the original sentences and included the court's consecutive

sentencing findings, particularly finding that Reese had committed these crimes while he was on community control for another crime. (Nunc Pro Tunc Sentencing Entry, Case No. CR-18-624729-A, Doc. No. 10-1, Ex. 28).

**D.     Motion to Vacate**

Reese pro se moved the trial court to vacate his sentence on June 10, 2021, in CR-18-624729-A. (Doc. No. 10-1, Ex. 29). He complained that he was not notified about the nunc pro tunc entry in time to appeal. (*Id.*) Reese also asserted 1) he was surprised on August 13, 2018, that the aggravated robbery would be tried first; and 2) he felt pressured into taking a plea. (*Id.*) He also referenced his ADA issues and argued that he has been mentally ill since he was a child. (*Id.*) The trial court denied the motion on June 16, 2021. (*Id.*, Ex. 30)

**E.     Federal Habeas Petition**

On May 3, 2021,[2] Reese filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C §2241. (Doc. No. 1) He later moved for the court to appoint him counsel. (Doc. No. 6) On January 20, 2022, this Court denied Reese's request for counsel and ordered Reese to file an Amended Petition setting forth his ground(s) for relief and a brief summary of relevant facts to support each ground no later than February 23, 202. (Doc. No. 11) On February 14, 2022, Reese filed an amended petition under 28 U.S.C. §2241 asserting the following grounds for relief:

> **Ground One:** The Petitioner was denied due process of law and a fair trial under the Sixth Amendment as applied to the Fourteenth Amendment of the United States Constitution with respect to the state trial court's bias assertion that my right to retain counsel, entitlement of the appointed attorney being terminated from my case, or the appointed attorney's ineffective presence was untruthful.

---

[2] It is well settled that the filing date of a federal habeas corpus petition submitted by a pro se prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. See *Houston v. Lack*, 487 U.S. 266 (1988); see also *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002).

> **Ground Two:** The Petitioner's appointed counsel failed to raise the issue of potential bias as to my right to retain effective private counsel as guaranteed by the Sixth and Fourteenth United States Constitutional Amendments

(Doc. No. 12) After receiving an extension of time, State of Ohio ("Respondent") filed its Return of Writ to Reese's amended petition on May 4, 2022. (Doc. No. 18) Subsequently, Reese filed a Traverse.[3] (Doc. No. 22)

## III.     Legal Analysis

### A.     Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

A petitioner may procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102

---

[3] Reese's Traverse was not timely. However, on July 22, 2022, the Court granted Reese's motion to excuse the untimeliness of his Traverse.

S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6ᵗʰ Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

11

(4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). As stated above, conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See*

12

*also Reese v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.  Ground One**

In his first ground for relief, Reese argues that he "was denied due process of law and a fair trial under the Sixth Amendment...with respect to the state trial court's bias assertion that my right to retain counsel, entitlement of the appointed attorney being terminated from my case, or the appointed attorney's ineffective presence was untruthful." (Doc. No. 12) Though the wording in this ground is unclear, the language closely resembles Reese's first assignment of error in his direct appeal:

> The appellant was denied due process of law and a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution due to expressed belief that the appellant was untruthful and attempting to deceive the court.

Also, Reese asserts that he exhausted this ground in state court in *State v. Reese,* 2019-Ohio-4670, 16 (2019) and his Ohio Supreme Court appeal in *State v. Reese,* 2020 Ohio LEXIS 1422. Thus, even though the language slightly differs in the petition, the undersigned will interpret Ground One in the way it was presented in state court. To the extent Reese puts forth arguments not presented on his state court direct appeal, those arguments are procedurally defaulted.[4]

---

[4] The doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *See Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir.1987). Where the theory presented in a habeas petition is separate and distinct from the theory considered and rejected in state court, the claim is procedurally defaulted. See 28 U.S.C. § 2254(b)(1)(A) (A habeas petition "shall not be granted unless…the application has exhausted" his State court remedies.); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (finding petitioner's ineffective assistance of counsel claim procedurally defaulted because it was based on a different theory than the one raised in state court). Since Reese's direct appeal has concluded, he would be barred by res judicata from attempting to assert his claim in another state proceeding. *See, e.g, State v. Perry*, 10 Ohio St.2d 175, 175-76, 22 N.E.2nd 104, syllabus (Ohio 1967). The Sixth Circuit has consistently held that res judicata is an adequate and independent ground establishing procedural default. *See, e.g., Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006), *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (finding that "Ohio's doctrine of res judicata as a procedural bar is regularly applied by the Ohio Courts"). Reese has not presented a valid claim of cause and prejudice or actual innocence to excuse his default of Ground One. Thus, to the extent Reese's judicial bias argument is based on a theory not presented to the state court in his direct appeal, he is procedurally defaulted from presenting those arguments to this Court.

13

1.  **Standard**

 Habeas claims of judicial bias are reviewed pursuant to the standard established in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *See Alley v. Bell,* 307 F.3d 380, 386 (6th Cir.2002) (stating that "[t]his court has looked to the Supreme Court's decision in *Liteky v. United States* to provide the standard for deciding judicial bias claims" under the Due Process Clause). In *Lyell v. Renico,* 470 F.3d 1177 (6th Cir.2006), the Sixth Circuit discussed the *Liteky* standard as follows:

> Under *Liteky,* a judge's misconduct at trial may be "characterized as bias or prejudice" only if "it is so extreme as to display clear inability to render fair judgment," so extreme in other words that it "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge.... [But] they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display," by contrast, do not establish such bias or partiality.

*Lyell,* 470 at 1186-87 (*quoting Liteky v. United States* 510 U.S. at 551, 555-556). The Sixth Circuit has directed that on habeas review, courts have "narrow authority" to review judicial bias claims. *Allen v. Hawley*, 74 F. App'x 457, 461 (6th Cir. 2003). Habeas review should not be granted unless the state court applied U.S. Supreme Court guidelines for judicial bias claims in an "unreasonable" fashion—"that is to say, inordinate, illogical, and ultimately, irrational." (*Id.*)

2.  **Analysis**

 In the last reasoned decision, the Ohio Court of Appeals reviewed the judicial bias claim on the merits and rejected it, finding:

> [*P22] In his first assignment of error, Reese states that "he does not question the ethics or integrity of the judge in this case," but he contends that "under the unique facts of this case," the trial court should have recused itself as the trier of fact in the bench trial

14

because of comments the court made at the August 13, 2018 hearing concerning Reese's veracity.

[*P23] Judicial bias has been described as

> "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956).

[*P24] However, if a "trial judge forms an opinion based on facts introduced or events occurring during the course of the current or prior proceedings, this does not rise to the level of judicial bias, 'unless [the opinions] display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *State v. Hough*, 2013-Ohio-1543, 990 N.E.2d 653, ¶ 11 (8th Dist.), quoting *Dean* at ¶ 49. This is because the law presumes that a judge is unbiased and [**14] unprejudiced in matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome this presumption. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 23, citing *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 657 N.E.2d 1361 (1994).

[*P25] Courts of appeals lack the authority to find that a judge was biased against a party or void a trial court's judgment on a claim that the trial judge was biased. *State v. Ramos*, 88 Ohio App.3d 394, 398, 623 N.E.2d 1336 (9th Dist.1993), citing *Beer v. Griffith*, 54 Ohio St.2d 440, 377 N.E.2d 775 (1978). Rather, "[t]he Chief Justice of the Supreme Court of Ohio, or his [or her] designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." *Jones v. Billingham*, 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2d Dist.1995), citing Section 5(C), Article IV, Ohio Constitution. Nonetheless, biased comments by the judge can be reviewed by an appellate court for due-process violations. *State v. Frazier*, 2017-Ohio-8307, 98 N.E.3d 1291, ¶ 16 (8th Dist.), citing *Power* at ¶ 22.

[*P26] In the procedural history and factual background of this case, we set forth each comment made by the trial court at the August 13, 2018 hearing that Reese asserts contains evidence of bias. Reese contends that a review of these comments show that the trial court believed him to be "deceitful." He therefore claims that the trial court could not assess "the overall credibility of the defense" in the subsequent bench trial. We disagree.

[*P27] At the beginning of the August 13, 2018 hearing, [**15] as trial in the aggravated robbery case was about to begin, Reese's defense counsel told the trial court that Reese was "unsatisfied at this point" and wished to speak to the court. Reese proceeded to tell the trial court that he had no idea until the previous hearing on August 8, 2018, that the

15

aggravated robbery case was going to be tried first. Reese further complained that his attorney had been telling him all along that the murder case would be tried first. Reese told the court that his attorney seemed to be working for the prosecutor rather than working for him.

[*P28] The trial court listened to Reese's complaints and then told Reese that it did not believe that he did not know that it was going to try the aggravated robbery case that day. The trial court specifically told Reese at the August 8, 2018 hearing, "You stand advised then that on August 13 we will begin the trial in 624420." The trial court then told the parties that "the morning after a verdict in that case, we'll begin the trial in the murder case." The trial court further stated at the August 8 hearing that "as of today, Mr. Reese, both of them remain set for August 13; but as just mentioned, we're not going to try the [**16] two of [the cases] together. It's going to be one after the other. First, the aggravated robbery; and then the murder."

[*P29] The trial court also listened to Reese's complaints regarding Reese's claim that his trial counsel seemed to be working for the prosecution and concluded that they had no merit. Reese claimed that his attorney kept changing "the [sentencing] numbers around multiple times." But after discussing the matter with the state, the trial court learned that Reese's defense counsel was actually able to get the state to agree to reduce the minimum sentence to 15 years if he accepted the packaged plea deal rather than 23 years, which is what the state had originally offered.

[*P30] After review, we find that the trial court had good reason to question Reese's truthfulness regarding his claim that he did not know that the aggravated robbery case was going to be tried on August 13, 2018, or his claim that his attorney was working against his best interests. Thus, the trial court's comments do not "display a deep-seated favoritism or antagonism" that made "fair judgment impossible." *Id.*

[*P31] Moreover, when Reese waived his right to a jury trial, the trial court specifically asked Reese if he [**17] understood that if his case were tried to a jury, the jury would not know that he was in jail or that he had prior convictions. The trial court stated, "I certainly have become a little bit acquainted with you, and I'm aware of some things about your record and background that unless you testify would not come in in a jury trial." Reese indicated that he understood those facts and told the court that it was still his voluntary choice to waive his right to a jury trial.

[*P32] Reese cites to *Williams v. Pennsylvania*, 579 U.S. , 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016), to support his claim that "due process 'demarks only the outer boundaries of judicial disqualifications'" and that "[m]ost questions of recusal are addressed by more stringent and detailed ethical rules[.]" *Id.* at 1908, quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). This case has no application to the facts here because the Pennsylvania Supreme Court Justice who was biased in Williams had actually been the prosecutor assigned to the defendant's case when the defendant was sentenced to death.

16

[*P33] Reese then goes on to set forth several rules of the Ohio Code of Judicial Conduct in support of his claim that the trial judge should have recused himself. We disagree. This code "establishes standards for the ethical conduct of judges and judicial candidates" [**18] and "provide[s] a basis for regulating their conduct through disciplinary agencies." *In re Judicial Campaign Complaint*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, ¶ 14, citing Jud.Cond.R., Preamble [3]. Again, only the Chief Justice of the Ohio Supreme Court, or a judge whom she designates, can "determine a claim that a common pleas judge is biased or prejudiced." *Billingham*, 105 Ohio App.3d at 11, 663 N.E.2d 657, citing Section 5(C), Article IV, Ohio Constitution.

[*P34] After reviewing the comments singled out by Reese from the August 13, 2018 hearing as well as the entire transcript from that hearing and the transcript from the August 8, 2018 hearing, we conclude that Reese did not meet his burden of overcoming the presumption that the trial court was "unbiased and unprejudiced." *Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, at ¶ 23, citing *Olivito*, 74 Ohio St.3d 1261, 657 N.E.2d 1361. The trial court's comments are simply not compelling evidence of a deep-seated antagonism that made fair judgment impossible. *Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, at ¶ 48. Although the record establishes that the trial court did not believe Reese that he did not know the aggravated robbery case was set for trial on August 13, 2018, that does not mean that the trial court was biased against him. The record also establishes that the trial court found that Reese's reasons for requesting a continuance for new counsel on the morning of trial had no merit. Again, the trial court [**19] had good reason to question Reese's veracity regarding his claims. Notably, the trial court did not say one word about the facts of Reese's two cases. There is simply nothing in the record to show that the trial court had prejudged the facts of Reese's cases or that it could not listen to the evidence unbiasedly and determine Reese's guilt or innocence.

[*P35] Thus, Reese's first assignment of error is overruled.

(Doc. No. 10, Ex. 21; *State v Reese*, Eighth App. Dist. (Cuyahoga) No. 107714, 2019-Ohio-4670, 2019 Ohio App. LEXIS 4713 at *13-19 (Ohio App. Nov. 14, 2019)). The appellate court determined that the trial court had "good reason to question Reese's truthfulness regarding his claim that he did not know that the aggravated robbery case was going to be tried on August 13, 2018, or his claim that his attorney was working against his best interests" and, therefore, the comments did not "display a deep-seated favoritism or antagonism" that made "fair judgment impossible." (*Id.*) In this case, the undersigned agrees that the trial judge's comments fall far

17

short of the type of "deep-seated...antagonism" envisioned in *Litkey*. Moreover, the standard for habeas review is whether the appellate court's determination of the judicial bias claim was illogical or irrational, which Reese has not demonstrated. *Allen*, 74 F. App'x at 46.

Regarding the August 13th trial date, the trial judge expressed disbelief that Reese was unaware that he would be facing trial for the aggravated robbery case on August 13th  (prior to the murder case) stating, "I think you are lying to me" and "[t]hat's boloney (*sic*)." (Tr. 30, 31) The judge then informed Reese that he found out the murder case was going second at the Court's August 8th hearing, which the transcript confirms:

> [A]s of today, Mr. Reese, both of them remain set for August 13; but as just mentioned, we're not going to try the two of them together. It's going to be one after the other. *First, the aggravated robbery; and then the murder*.

(Tr. 6, emphasis added) The judge also stated that since April 19, 2018, the aggravated robbery and murder cases were both set for trial on the docket for August 13th. (Tr. 30) The Judge noted that although the docket entries never stated which of the two cases would be tried first, Reese knew that both cases were slated for trial on August 13th at least four months prior. (*Id.*) Next, regarding Reese's comments that it seemed like defense counsel was "working with the prosecutor instead of working with me" and that his counsel "changed the numbers around multiple times." (Tr. 22-23) The court inquired into the plea bargain issue and found out that defense counsel got the prosecutor to reduce the plea bargain from 23-30 years to 15-30 years. (*Id.*) Thus, the judge determined that Reese's claim that defense counsel was working against him was false. Reese then stated that defense counsel told him the new offer was 13-20 years, a number that was never offered by the State. The judge responded:

> And I'm highly dubious of that, Mr. Reese. Obviously, I wasn't there with you, but I know you already started on a lie to me here today, and although I haven't been

18

represented by Mr. Morgan, I have seen his work over many, many years, and I just can't believe that he would lie to you about something so easily wrong.

(Tr. 25)

The Supreme Court has cautioned, "[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). As the Supreme Court expressed in *Liteky*:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible…
> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

510 U.S. at 555-56, 114 S.Ct. 1147 (emphasis in original). In addition, a party seeking to establish judicial bias bears the burden of overcoming the presumption that  judges are impartial. *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

Reese's allegations fail to rebut the presumption of impartiality and do not present a viable claim of constitutionally impermissible judicial bias. Reese does not allege that the trial court's bias stemmed from an extrajudicial source. Nor has he demonstrated that the trial court had such a high degree of favoritism toward the prosecution or antagonism toward Reese as to make fair judgment impossible. The judge's critical comments all related to Reese's representations that (1) he was unaware his aggravated robbery trial was set to take place on

19

August 13th and (2) that his counsel working against him. The judge's comments were opinions formed by the judge on the basis of events occurring during the course of the pretrial hearings. As the appellate court found, the trial court had "good reason to question Reese's truthfulness" regarding these claims. Further, there are no suggestions of judicial bias during the course of Reese's bench trial. For all the above reasons, the appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law and Reese's first ground is without merit.

## C.  Ground Two

In Ground Two, Reese presents an ineffective assistance of counsel claim.  (Doc. No. 12 at 15) Reese asserts he exhausted his claim in: (a) *State v Reese*, Eighth App. Dist. (Cuyahoga) No. 107714, 2019-Ohio-4670, 2019 Ohio App. LEXIS 4713 (Ohio App. Nov. 14, 2019) and (b) *State v. Reese,* No. 2020-0262, 2020 Ohio LEXIS 1422, 2020-Ohio-3365, 147 N.E.3d 663 (Ohio June 23, 2020). (Doc. No. 12 at 16)

### 1.  Standard

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would

20

probably have won" and it must have been "so manifestly ineffective that defeat was snatched

from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.

1992). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S.

at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are

not enough to support a claim of ineffective assistance of counsel and there is a presumption that

the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also*

*United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

### 2. Analysis

In the last reasoned decision, the Ohio Court of Appeals found the following with respect

to Reese's ineffective assistance of trial counsel claim:

> [*P36] In his second assignment of error, Reese contends that his trial counsel was
> ineffective for failing to raise the potential bias on the part of the trial court. Reese states
> that "[i]nsofar as the state may claim that the issue of potential bias on the part of the
> court was waived due to failure to object, * * * such failure constituted ineffective
> assistance of counsel."

> [*P37] To establish that trial counsel was ineffective, a defendant must show that (1)
> counsel's performance was deficient, and (2) the deficient performance prejudiced the
> defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674
> (1984). Defense counsel's performance must fall below an objective standard of
> reasonableness to be deficient in terms of ineffective assistance of counsel. *State v.*
> *Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Moreover, the defendant
> [**20] must show that there exists a reasonable probability that, were it not for counsel's
> errors, the outcome of the proceeding would have been different. *State v. White*, 82 Ohio
> St.3d 16, 23, 1998-Ohio-363, 693 N.E.2d 772 (1998).

> [*P38] Because we did not find any evidence of judicial bias in the first assignment of
> error, Reese's argument that his trial counsel should have raised the issue of judicial bias
> is wholly without merit.

> [*P39] Accordingly, Reese's second assignment of error is overruled.

(Doc. No. 10, Ex. 21; *State v Reese*, 2019-Ohio-4670 at *19-20.)

21

The state appellate court identified the proper standard (*Strickland)* and determined that because the underlying claim of judicial bias was not valid, counsel was not ineffective for failing to object on that basis. The undersigned similarly found the judicial bias claim without merit. Thus, the appellate court's determination was not "an unreasonable application of," *Strickland* and was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1996). Reese's has not demonstrated an entitlement to habeas relief on Ground Two.

<u>Ineffective of Counsel – Theories Not Presented on Direct Appeal</u>

The undersigned also notes that the ineffective assistance of trial counsel argument Reese presents in his petition differs from what was presented on his direct appeal. Reese now argues that his trial attorney was ineffective when he failed to sufficiently consult with him prior to trial; refused to step down; and coerced him into a guilty plea in the "aggravated robbery case."

As an initial matter, Reese argues that Ohio law required his trial counsel to step down after Reese raised complaints about trial counsel's representation. Reese claims that since counsel did not step down, Ohio law invalidates all of trial counsel's subsequent actions. That is incorrect. The statutes Reese relies on Ohio Rev. Code 120.05(C) and 120.03(B)(1) do not support such a contention. Both ORC 120.05(C) and 120.03(B)(1) address standards of indigency for obtaining public defender services. For example, 120.05(C) states that a public defender must terminate his services is it is later determined the person is ineligible for such services. However, Reese never became ineligible. Thus, these statutes do not apply here and do not support Reese's assertion that his counsel's services were null and void the moment he discussed wanting to consult a new attorney.

22

Next, to the extent Reese now presents his ineffective assistance of counsel argument under a different theory than presented on his direct appeal, that argument is procedurally defaulted. Reese procedurally defaulted this portion of the claim in several ways: (1) he failed to fairly present the claim to the state appellate court because it was based on a different theory; and (2) he never appealed the denial of his motion to vacate.

First, the portions of Reese's ineffective assistance of counsel claim that were not presented to the state appellate court are procedurally defaulted because he did not fairly present them on his direct appeal. This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *See Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir.1987).  In his direct appeal Reese argued that his trial counsel was ineffective for failing to challenge judicial bias. (Doc. No. 10-1, Ex. 19 at 112-13; Ex. 25 at 234). Therefore, the argument that his counsel failed to consult with him; refused to step down; and coerced his guilty plea in the aggravated robbery case rests on a theory which is separate and distinct from the one previously considered and rejected in state court. Thus, this portion of his claim is procedurally defaulted. See 28 U.S.C. § 2254(b)(1)(A) (A habeas petition "shall not be granted unless…the application has exhausted" his State court remedies.); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (finding petitioner's ineffective assistance of counsel claim procedurally defaulted because it was based on a different theory than the one raised in state court). Since Reese's direct appeal has concluded, he would be barred by *res judicata* from attempting to assert his claim in another state proceeding. *See, e.g, State v. Perry*, 10 Ohio St.2d 175, 175-76, 22 N.E.2nd 104, syllabus (Ohio 1967). The Sixth Circuit has consistently held that *res judicata* is an adequate and independent ground establishing procedural default. *See, e.g.,*

23

*Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006), *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (finding that "Ohio's doctrine of *res judicata* as a procedural bar is regularly applied by the Ohio Courts").

Second, though Reese's motion to vacate his conviction presented some of the arguments he now presents in his petition, he never appealed from the denial of that motion. (Doc. No. 10-1, Exs. 29, 30) A constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir.1990). Reese did not appeal from the denial on his motion to vacate and the time to appeal from the June 10, 2021, decision has passed.

Finally, the undersigned notes that Reese's petition also includes assertions that he was coerced into accepting a guilty plea in the "aggravated robbery case" (62440). Reese's petition does not directly state which case he appeals from. However, Reese asserts that he exhausted his grounds citing to the "murder case" (See Doc. No. 12 at 16) And Reese suggests his habeas grounds for relief are the same grounds he brought on appeal in the murder case. (*Id.* at 15) (Reese states, "The grounds I brought to state court still apply" and then lists his two habeas grounds for relief.) Thus, Reese's petition relates to the conviction in his "murder case." "The norm under § 2254(a) is that one habeas application attacks one judgment." *In re Caldwell,* 917 F.3d 891, 893 (6th Cir. 2019)

Nonetheless, the Sixth Circuit has found that petitioners, "may challenge multiple judgments from the same court in a single petition." *Id.* Therefore, to the extent Reese's ineffective assistance of counsel argument relates to the guilty plea in his "aggravated robbery case," Reese's argument is procedurally defaulted. Reese did not appeal his sentence in that case,

24

did not argue coercion in his direct appeal, and failed to present the issue to the highest court. *Henry v. Perry*, No. 22-5777, 2023 WL 2372558, at *4 (6th Cir. Jan. 27, 2023) (finding procedural default of ineffective assistance of counsel claim based on the allegation that trial counsel coerced petition into pleading guilty because petitioner did not fairly present the claim to the state court); *See also Moore v. Les Par., Warden*, No. 21-1259, 2021 WL 7278912, at *3 (6th Cir. Nov. 29, 2021) (finding that "reasonable jurists would not debate" the procedural default of a claim raised for the first time in his motion for relief from judgment denied by the trial court). Thus, any portion of Reese's ineffective assistance of counsel claim that relates to his guilty plea in the "aggravated robbery case" is procedurally defaulted.

In summation, to the extent Reese's Ground Two aligns with what was argued in Reese's direct appeal (i.e., that his trial attorney was ineffective for failing to object to judicial bias), his argument does not warrant habeas relief because he has not demonstrated judicial bias and, therefore, counsel was not ineffective for failing to raise the issue. Reese's argument that his trial counsel's actions were null and void in violation of Ohio law also has no merit. Finally, to the extent Reese presents ineffective assistance of trial counsel arguments that were not presented on his direct appeal, Reese has procedurally defaulted those arguments for the reasons explained above. Reese has not put forth a valid argument to excuse his default based on cause and prejudice or actual innocence. Thus, Reese has not demonstrated an entitlement to habeas relief under Ground Two.

## IV. Conclusion

For all the reason set forth above, it is recommended that Reese's Petition be **DENIED**.

Date: May 16, 2023                              *s/ Jonathan Greenberg*
                                                Jonathan D. Greenberg
                                                United States Magistrate Judge

## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**

26